```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| IDA PAVLICHENKO,<br>    Plaintiff,<br><br>v.<br><br>THOMAS RIDGE, as Secretary of<br>the Department of Homeland<br>Security, EDUARDO AQUIRRE,<br>Acting Director of the Bureau<br>of Citizenship & Immigration<br>Services, and DENIS C.<br>RIORDAN, District Director<br>of the Bureau of Citizenship<br>& Immigration Services for<br>Boston, Massachusetts,<br>    Defendants. | Civil Action No. 05-10429-RGS |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AND REMAND TO THE UNITED STATES CITIZENSHIP AND IMMIGRATION
SERVICE FOR FURTHER PROCEEDINGS**

The defendants, by their attorney, Michael J. Sullivan, U.S. Attorney for the District of Massachusetts, respectfully move this Court to dismiss the above-captioned matter pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and remand the matter to the United States Citizenship and Immigration Service ("USCIS") for further proceedings as this Court lacks subject matter jurisdiction where the statutory 120 day period provided by 8 U.S.C. § 1447(b) has not yet expired.

**SUMMARY OF FACTS**

The plaintiff, Ida Pavlichenko, filed an application for naturalization (Form N-400) on December 23, 2003 at the Vermont

Service Center.  See Declaration of Denis Riordan ("Riordan Decl.") ¶ 5, submitted herewith.  The plaintiff was interviewed on September 2, 2004 at the Boston, Massachusetts USCIS office.  Id.; see also Complaint ("Compl.") ¶ 8.  On March 7, 2005, the plaintiff filed a complaint with this Court pursuant to 8 U.S.C. § 1447(b) seeking a hearing on his naturalization application.  It is undisputed that the USCIS has not completed its consideration of the plaintiff's application.  Compl. ¶ 8.

The plaintiff's fingerprints were originally processed by the Federal Bureau of Investigation ("FBI") on February 13, 2004.  Riordan Decl. ¶ 6.  At the same time, the USCIS was in the process of conducting its background check of the plaintiff.  Id.  The USCIS background check of the plaintiff took longer than fifteen months from the date of the original processing of the plaintiff's fingerprints by the FBI.  Id.  As a result, the plaintiff's fingerprints expired.  Id.  The FBI has scheduled the plaintiff to appear on September 16, 2005 to be fingerprinted again.  Id.

Regulations require that the USCIS notify applicants for naturalization to appear before a USCIS officer for initial examination on the naturalization application only after the Service has received a definitive response from the FBI that a full criminal background check of an applicant has been completed.  8 C.F.R. § 335.2.  Pursuant to this regulation, the

USCIS cannot conduct the examination of the plaintiff's application until the FBI completes its fingerprinting of the plaintiff.

**LEGAL ANALYSIS**

I.   **The Procedure For Considering Applications For Naturalization**

A lawful permanent resident alien may be naturalized as a United States citizen if he meets the five-year statutory residency requirement, has resided continuously in the United States from the date of his application to the time of admission as a citizen, and is of good moral character.  See  8 U.S.C. § 1427(a).

Under the statutory scheme, the naturalization process commences with the filing of a Form N-400 application for naturalization.  Id. § 1445(a); 8 C.F.R. §§ 334.2 & 316.4.  The USCIS then conducts a thorough background investigation of the applicant, including a review of all pertinent immigration and police records.  8 U.S.C. § 1446(a); 8 C.F.R. § 335.1.  Next, the applicant is interviewed by an examiner who is authorized to grant or deny the application.  8 U.S.C. § 1446(d); 8 C.F.R.§ 335.3.  If the application is denied, the applicant may request an administrative hearing before a senior immigration examiner.  8 U.S.C. § 1447(a); 8 C.F.R. § 336.2.  The hearing must be conducted promptly, no later than 180 days from the date

the appeal is filed.  8 C.F.R. § 336.2(b).  If the examiner upholds the denial, the applicant may seek a *de novo* review in federal district court.  8 U.S.C. § 1421(c); 8 C.F.R. § 336.9(b) & (c).

 **A. The Background Check**

As stated above, after an individual files the Form N-400 application for naturalization, the USCIS conducts a thorough background investigation of the applicant, including a review of all pertinent immigration and police records.  8 U.S.C. § 1446(a); 8 C.F.R. § 335.1.  To this end, the former INS adopted regulations providing, *inter alia*, that:

> Subsequent to the filing of an application for naturalization, the Service shall conduct an investigation of the applicant.  The investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application . . .

8 C.F.R. § 335.1 (2004).  The need to conduct a background investigation of an applicant for naturalization is necessitated by the fact that, to be eligible for naturalization, an applicant must establish that he is a person of good moral character, see 8 U.S.C. § 1427(d), and an alien cannot establish good moral character if, *inter alia*, he or she has been convicted of certain criminal offenses, including crimes involving moral turpitude.  See 8 U.S.C. § 1101(f).

4

Pursuant to this statutory requirement, USCIS conducts several forms of security and background checks when a lawful permanent resident alien applies for naturalization to ensure that the alien is eligible for naturalization and that he or she is not a risk to national security or public safety. These security and background checks include: (a) a record check of the alien made against Department of Homeland Security's ("DHS") own immigration systems; and (b) an FBI fingerprint check for relevant criminal history records on the alien *(e.g.* arrests and convictions). See Declaration of Denis C. Riordan (Riordan Decl.") ¶ 2.

If a background or security check reveals derogatory information on the alien (i.e., a "hit"), then USCIS works with other divisions of the Department of Homeland Security ("DHS") and other law enforcement and intelligence agencies, as necessary, to obtain all available information concerning the derogatory record. Clearance of the individual in such cases may take additional time pending the law enforcement agency's response and ultimate resolution. Prior to a final adjudication on a request for naturalization, USCIS requires a definitive and favorable response on all background checks.

**B.   The Examination**

The "examination" of an applicant for naturalization is not limited to the interview by the examiner.  8 U.S.C. § 1446(b)

provides:

> (b) Conduct of examinations; authority of designees; record
>
> The Attorney General shall designate employees of the Service to conduct examinations upon applications for naturalization. For such purposes any such employee so designated is authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization, to administer oaths, including the oath of the applicant for naturalization, and to require by subpoena the attendance and testimony of witnesses, including applicant, before such employee so designated and the production of relevant books, papers, and documents, and to that end may invoke the aid of any district court of the United States; and any such court may, in the event of neglect or refusal to respond to a subpoena issued by any such employee so designated or refusal to testify before such employee so designated issue an order requiring such person to appear before such employee so designated, produce relevant books, papers, and documents if demanded, and testify; and any failure to obey such order of the court may be punished by the court as a contempt thereof. The record of the examination authorized by this subsection shall be admissible as evidence in any hearing conducted by an immigration officer under section 1447(a) of this title. Any such employee shall, at the examination, inform the applicant of the remedies available to the applicant under section 1447 of this title.

Moreover, Congress has added yet another requirement to the consideration of an application for naturalization - completion of a criminal background investigation of the applicant. Public Law. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448, provides in part that:

> During fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration

6

>and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed, except for those exempted by regulation as of January 1, 1997.

To give effect to Congress' enactment of this requirement, the USCIS adopted a regulation requiring that no examination begin until after the USCIS received the FBI's report of it's full criminal background check. 8 C.F.R. § 335.2(b) provides:

> (b) Completion of criminal background checks before examination. The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed. A definitive response that a full criminal background check on an applicant has been completed includes:
>
> (1) Confirmation from the Federal Bureau of Investigation that an applicant does not have an administrative or a criminal record;
>
> (2) Confirmation from the Federal Bureau of Investigation that an applicant has an administrative or a criminal record; or
>
> (3) Confirmation from the Federal Bureau of Investigation that two properly prepared fingerprint cards (Form FD-258) have been determined unclassifiable for the purpose of conducting a criminal background check and have been rejected.

8 C.F.R. 335.2(b), adopted March 17, 1998, 63 FR 12979-01.

Consequently, as a matter of law the "examination" by the USCIS cannot be conducted, and an application for naturalization cannot be adjudicated, until the USCIS receives confirmation from the FBI that a full criminal background check has been completed

which includes a recent fingerprint check.  In the case at hand, the FBI has not completed its criminal background check.

**II.   The Court Lacks Jurisdiction Of This Action**

It is well established that "[f]ederal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986).  Subject matter jurisdiction cannot be conferred by the parties, nor can a defect in subject matter jurisdiction be waived by the parties.  See United States v. Cotton, 535 U.S. 625, 630 (2002).  In the case at hand, the plaintiff relies on a provision of the Immigration and Nationality Act, 8 U.S.C. § 1447(b), for the District Court's subject matter jurisdiction.  8 U.S.C. § 1447(b) provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter.  Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

On its face, § 1447(b) grants jurisdiction to the United States District Court for the district in which the applicant resides if 120 days have passed from the date on which an examination of an application for naturalization is conducted under 8 U.S.C. § 1446 and no decision has been made by the USCIS.  As noted above, an examination as defined by law includes more than the interview of the applicant by an examiner and may not be conducted unless and

9

until the USCIS received the FBI's report of its criminal background check.

In the case at hand, the FBI's background check has not been completed. Accordingly, the examination of the plaintiff's application for naturalization has not yet been conducted and the 120 days required by the statute have not elapsed.

Because the plaintiff filed this action prior to the expiration of the time period allowed by Congress for the USCIS to complete the examination of his application, the Court has not acquired subject matter jurisdiction of this action. See Danilov v. Aguirre, 370 F.Supp.2d 441, 445 (E.D.Va 2005).

Accordingly, the complaint should be dismissed as the Court lacks subject matter jurisdiction to hear the matter.

### III. The Court Should Remand This Matter to the Service

Because the Court lacks subject matter jurisdiction to hear this matter at this time, the defendants respectfully suggest that the Court exercise its option under § 1447(b) and remand the matter to the USCIS. The statute that authorizes the Court to hear this matter and empowering it to act, 8 U.S.C. § 1447(b), expressly gives the district court discretion to "either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."

Under the Homeland Security Act of 2003, Pub.L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002), the USCIS is the agency

charged by Congress with responsibility for determining whether to grant or deny applications for benefits under the immigration laws, including applications for naturalization.  The FBI has scheduled the plaintiff for fingerprinting on September 16, 2005.  See Riordan Decl. ¶ 6.  Once the FBI completes the fingerprint analysis, the USCIS will be in a position to complete its examination of the plaintiff's application for naturalization and reach a decision.

The importance of allowing USCIS to complete this process cannot be overstated.  As the Supreme Court has stated, the government has a "strong and legitimate interest in ensuring that only qualified persons are granted citizenship," and "[t]he Government is entitled to know of any facts that may bear on an applicant's statutory eligibility for citizenship, so that it may pursue  leads and make further investigation if doubts are raised."  Berenyi v. INS, 385 U.S. 630, 637-638 (1967).

The Court should permit the USCIS to make at least the initial determination of the plaintiff's application, and to create a record on which any review of its decision (if necessary) could be based.  The Supreme Court has recognized that "judicial deference to the Executive Branch is especially appropriate in the immigration context." Immigration and Naturalization Service v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999).  In this case, that deference should take the form of a

remand to the Service with instructions to render an initial decision on the plaintiff's application.  Should the plaintiff be dissatisfied with that decision, he may return to this Court, after exhaustion of his remedies administratively, for a *de novo* determination.  In that event, the Court will have the benefit of a full record, and a reasoned determination to focus the parties submissions.  And, of course, it may also be that no further proceedings in this Court will be required.

Accordingly, even were the Court to conclude it had subject matter jurisdiction of the plaintiff's claim, still pursuant to § 1447(b) the Court should enter an Order remanding this matter to the Service with instructions to complete its examination of the plaintiff's application and reach a decision.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the plaintiff's complaint for want of subject matter jurisdiction and remand the plaintiff's application to the USCIS for a decision.

```
                                    Respectfully submitted,

                                    UNITED STATES OF AMERICA
                                    By its attorney,

                                    MICHAEL J. SULLIVAN
                                    United States Attorney

Dated: September 6, 2005            /S/ Christopher R. Donato
                                    Christopher R. Donato
                                    Assistant U.S. Attorney
                                    U.S. Attorney's Office
                                    John Joseph Moakley Courthouse
                                    1 Courthouse Way, Suite 9200
                                    Boston, MA 02210
                                    (617) 748-3303
```

**CERTIFICATE OF SERVICE**

I certify that on this day a true copy of the above document was served by first class mail, postage prepaid, upon the following:

Desmond P. FitzGerald, Esq.
FitzGerald & Company, LLC
18 Tremont Street, Suite 210
Boston, MA 02108

```
Dated: September 6, 2005            /S/ Christopher R. Donato
                                    Christopher R. Donato
                                    Assistant U.S. Attorney
```

**CERTIFICATION PURSUANT TO L.R. 7.1 (A)(3)**

I hereby certify that I conferred with Counsel for the plaintiff and attempted in good faith to resolve or narrow the issue presented in this motion.

```
Dated: September 6, 2005            /S/ Christopher R. Donato
                                    Christopher R. Donato
                                    Assistant U.S. Attorney
```

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IDA PAVLICHENKO
Plaintiff

v.                                                  Civil Action No: 05-10429-RGS

THOMAS RIDGE, as Secretary of the
Department of Homeland Security,
EDUARDO AGUIRRE, Acting Director
Of the Bureau of Citizenship and
Immigration Services, and Denis C.
Riordan, District Director of the
Bureau of Citizenship & Immigration
Services for Boston, Massachusetts,
              Defendants

# DECLARATION OF DENIS C. RIORDAN

I, Denis C. Riordan, do hereby declare and say:

1. I am the District Director of the Boston, MA office for the United States Citizenship and Immigration Services ("USCIS") in the Department of Homeland Security ("DHS"). I oversee the adjudication of applications for benefits including applications for naturalization. I make this declaration based upon personal knowledge and information made known to me in the course of my professional duties.

2. When a lawful permanent resident alien applies to USCIS for naturalization, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for naturalization and that he or she is not a risk to national security or public safety. These background checks currently include: (a) a record check of the alien made against DHS' own immigration systems; and (b) a Federal Bureau of Investigation ("FBI") fingerprint check for relevant criminal history records of the alien (e.g. arrests and convictions).

3. On occasions, law enforcement checks (including FBI fingerprint checks) have revealed significant derogatory information regarding alien applicants for immigration benefits, including applicants seeking naturalization, which has resulted in the alien being found ineligible for naturalization or other benefits and USCIS' denial of the application.

This information has also sometimes resulted in aliens being arrested by law enforcement agencies or charged under removal grounds and deported from the United States following a final EOIR order. In many instances, the disqualifying information on the alien has been discovered as the result of an FBI fingerprint check.

4. I have reviewed the administrative file relating to Ida Pavlichenko, and am thus familiar with the facts and circumstances of her case.

5. Ida Pavlichenko filed an application for naturalization (Form N-400) on December 23, 2003 at the Vermont Service Center. Subject was interviewed on September 2, 2004 at the Boston, MA USCIS office.

6. Ida Pavlichenko's fingerprints were processed by the FBI on February 13, 2004; however, due to the passage of time between February 13, 2004 and this date, subjects fingerprint check has is no longer current but has in effect expired. USCIS procedures require that after the passage of fifteen months, fingerprints taken in conjunction with naturalization applications must be retaken by USCIS, and resubmitted to the FBI for processing by the FBI. To comply with this requirement, subject has been notified (via notice dated August 31, 2005) to appear on September 16 at a USCIS Application Support Center for the purpose of being fingerprinted in conjunction with her naturalization application.

7. Based upon above, USCIS is continuing its background investigation of Ida Pavlichenko and is unable to proceed to the final adjudication of her naturalization application until her new fingerprint chart is processed by the FBI.

I declare under penalty of perjury that, based upon reasonable inquiry and my knowledge, information and belief, the foregoing is true and correct.

Executed on the 6th day of September, 2005 at Boston, MA.

_____
Denis Riordan
District Director
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security
Boston, MA